# In the matter of the Estate of Charles Lafferty, deceased.   Appeal of Patrick J. Corcoran.

*Practice, S. C.—Findings of fact by lower court—Partnership—Review.*

The finding of the existence of a partnership by the orphans' court upon evidence which, though sufficient, was contradicted, will not be reversed by the Supreme Court unless clear error is made to appear.

*Trusts and trustees—Liability of trustees—Joint trustees.*

Where one of three trustees files an account in the name of all of the trustees, admitting the receipt of principal and income, but the account is signed by only the trustee filing it, the other trustees, by permitting their names to be used, and by participating in the settlement and adjudication of the account, do not incur a joint liability for funds misappropriated by one of the trustees.

*Trusts and trustees—Commissions.*

Trustees are entitled to commissions upon the amount realized by sales of securities above their appraised value, but where the amount of such gain is very large, a commission of three and one half per cent is sufficient.

*Trusts and trustees—Claims for services—Joint trustees.*

A claim for services alleged to have been rendered to a trust estate at the instance of only two of the three trustees, cannot be allowed where there is no proof that the services were of benefit to all of the trustees, or to the trust estate.

*Trust and trustees—Defaulting trustee—Commissions.*

Where one of several trustees misappropriates the funds of the estate he should be deprived of his commissions, and his cotrustees who have rendered no service in connection with the fund which passed through the hands of the defaulting trustee only, and have incurred no liability therefor, are not entitled to any commissions on such fund.

*Evidence—Witness— Trust and trustees — Testimony taken before examiner.*

In a proceeding instituted by one trustee for the removal of his cotrustees, evidence taken before an examiner is inadmissible at the audit of the trustees' account, where the witnesses are living and can be produced at the audit.

Argued Jan. 4, 1898.   Appeal, No. 469, Jan T., 1896, by Patrick J. Corcoran, from decree of O. C. Phila. Co., Oct. T., 1896, No. 587, passing on exceptions to adjudication.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to adjudication.

From the record it appeared that Charles Lafferty died October 10, 1885, possessed of considerable property, both real and personal. By his will he appointed four persons to act as executors and trustees, and provided that " whenever my executors and trustees shall from any cause be reduced to two, they shall petition the orphans' court to appoint another so as to keep up the number of three executors and trustees. . . . They shall nominate to the court such person as shall be a satisfactory colleague and be approved by the court for capability and good character." He named as the executors of his will his son Charles H. Lafferty, his daughter Rose E. Lafferty (she being blind at the time of her appointment), the Right Rev. William O'Hara and Daniel Glackin. Upon the probate of the will Bishop O'Hara declined to act, and letters were granted to Charles H. Lafferty, Rose E. Lafferty and Daniel Glackin. Daniel Glackin subsequently died, and Rose Lafferty, widow of decedent, was appointed to succeed him. She died June 10, 1888, and on October 13, 1888, upon the petition of Charles H. Lafferty and Rose E. Lafferty, the surviving executors, Patrick J. Corcoran was appointed to fill the vacancy.

At the audit, a claim was made by the receiver of the firm of P. Lafferty & Co. to recover certain sums which said Corcoran, who was a member of this firm, had paid to the estate on account of his individual indebtedness thereto. The receiver claimed that the sums so paid over were partnership funds, while the accountants set up that the partnership was indebted to the trust estate for moneys of the trust diverted by Corcoran to the partnership, and also that the sums paid as above by Corcoran to the estate were paid in checks or cash which gave no notice that they consisted of partnership funds. The court rejected the receiver's claim.

The accountant presented a claim for five per cent commissions on $179,171, which represented the gain made upon the sale of certain trust property over the amount of the appraisement. The court allowed the commissions of three and one half per cent.

Other facts appear by the opinion of the court below, by HANNA, P. J., which was as follows :

It is no slight task to consider the many questions arising upon the settlement of this account. On November 3, 1892, the seventh account of the executors and trustees was filed. It is entitled the account of the three executors, but is signed by but one of the number, viz: Patrick J. Corcoran. It should be entitled the account of the trustees, or executors and trustees, for the reason that all duties connected with the administration of the estate long since ended. And the real and personal estate were held and managed by the accountants as trustees. The trust estate consists of both realty and personalty, the former comprising a large number of dwelling houses and ground rents, and the latter both railroad, railway stocks, and bonds and mortgages upon real estate. The control and management of the estate, exclusive of any permanent investment made from time to time by the trustees, seems to have been committed and intrusted by them to said Patrick J. Corcoran. Upon him devolved the duty of the collection of rents, interest and dividends, repair of the real estate, payment of taxes, etc., and the disbursement of the income in the payment of annuities and distributive shares, in such manner and at such times as he deemed proper and convenient. The office for the transaction of the business of the trust was in one of the dwelling houses of the estate, also the home of Rose E. Lafferty, a daughter of testator, and one of the trustees. At this office said Corcoran, with said Rose E. Lafferty, was in daily attendance. He was the bookkeeper for the trustees, and the few books required, such as rent book, cash book and check book were under his sole control, and the receipts and other vouchers were in his exclusive possession. As subsequently appeared, the books were kept in a negligent and inartificial manner. The trustees adopted the very proper and commendable custom of annually filing an account. When the time approached for the preparation of their seventh account it was prepared by counsel for the trustees; but was not satisfactory to Charles H. Lafferty, one of the trustees, for the reason that he had not examined it, nor compared therewith the vouchers, in the custody of his cotrustee Corcoran. The trustees had not for several years maintained, in their intercourse with each other, those relations of fraternal affection and friendly trust and confidence it was their duty to cultivate.

They had become unfriendly and estranged. And when the account prepared as stated was filed, without the concurrence and examination which Charles H. Lafferty desired, his dissatisfaction resulted in the employment by him of separate counsel. To add to his unwillingness to accept the correctness of the account and great dissatisfaction with the course adopted by his two cotrustees, Rose E. Lafferty and P. J. Corcoran, the account they filed as a joint account, by some misunderstanding or misinformation by counsel, was audited and confirmed nisi, unknown to said Charles H. Lafferty. The confirmation, however, was promptly vacated by the auditing judge upon the application of counsel for said Charles H. Lafferty. The account referred to as already stated was signed by said P. J. Corcoran alone, although it is to be presumed it was concurred in by said Rose E. Lafferty. It comprised the period beginning October 11, 1891, and ending October 10, 1892, and embraced both principal and income of the estate. After the vacation of the confirmation of the account, it seems that the counsel for Charles H. Lafferty, after many and tedious delays, succeeded in obtaining the books and vouchers in the possession of his cotrustee Corcoran, and employed a professional and expert accountant, who entered upon a prolonged examination of the same. Notwithstanding the suggestion of the auditing judge as to the proper practice to be observed, and instead of proceeding with the audit of the account filed by Corcoran and correcting it by surcharge, or disallowance of credits, and treating it either as a separate account of Corcoran, or his joint account with Rose E. Lafferty, the said Charles H. Lafferty, refusing to be bound by it, and claiming his well settled right to file a separate account, the account already filed was disregarded by the common consent of counsel, and the expert accountant employed proceeded to laboriously prepare another account, beginning October 11, 1891, and continuing to December 31, 1894, more than two years beyond the period embraced in the account already filed.

This new account was again entitled the account of the "executors" instead of "executors and trustees" or as "trustees" and is signed alone by said Charles H. Lafferty. It was filed with the register on May 2, 1895, and finally reached before the auditing judge on June 10, 1895. This long delay of

more than two years, with its attendant great expense, could have been avoided if counsel had followed the usual and regular practice of the audit and examination of accounts filed by one executor or other fiduciary without the knowledge or approval of his coexecutors, trustees, etc., or alleged by legatees, creditors, etc., to be false or otherwise incorrect.   The result is we have before us an account filed by one executor and trustee, but entitled the account of the three executors, and as to which his cotrustees are but constructively parties.   Moreover, it is not confined to the period embraced in the account filed by Corcoran as before mentioned.   But however irregular this mode of procedure, no objection was made either by said Corcoran or Rose E. Lafferty, and the audit of the account proceeded as if both were actually parties thereto.   Both appeared by counsel and in person, either before the auditing judge or at the argument of the exceptions.   All the trustees participated in the several matters in contest, two filed exceptions and all, by their counsel, took part in the argument.   So that they must be held to have joined in the account, and therefore individually and collectively liable to the cestuis que trust, for the balance of principal and income which, by the account, they admit to be due the trust estate.

Coadministrators may sever in their accounts and each is held liable only for his own administration; but they and their sureties are jointly liable in a suit on their bonds: Metz's Appeal, 11 S. & R., 204; Patterson's Est., 1 W. & S., 291; Davis's App., 23 Pa., 206.

Coexecutors and cotrustees may also account separately, and they are not jointly liable except for negligence and fraud; and this only where the estate of the defaulting trustee is insolvent: Boyd v. Boyd, 1 Watts, 365; Stell's App., 10 Pa. 149; Irwin's App., 35 Pa. 294; Geddis v. Irvine, 5 Pa. 508.

And in Hengst's App., 24 Pa. 413, it is held that by the settlement of a joint administration account executors render themselves prima facie liable for the balance; and in equity the estate of either who may subsequently die, is liable, if he had actually received the money, or the survivor be insolvent; especially if no effort had been made by the deceased executor during a number of years to secure the fund received by the executor who had become insolvent.

And if the coexecutors file or settle a joint account they become jointly liable. But should either desire to escape liability for assets not received by him, or impose upon his coexecutors, a liability to which they ought to contribute, he should either file a separate account, or insist upon moneys or other assets, the collection of which was incumbent upon the executors, being included in their joint account: Ducommun's App., 17 Pa. 268; Bierly's Est., 81* Pa. 419.

A joint account filed by coexecutors conclusively fixes their joint liability for so much as they have accounted for, but not for uncollected securities for which credit is taken in their account: Lightcap's App., 28 Pittsburg L. J. 162.

And where separate accounts are filed there should be a separate distribution: Evangelical Asso.'s App., 35 Pa. 316; Heyer's App., 34 Pa. 183. As the accountants have no joint duty of distribution, the account filed therefore admits the joint receipt and custody of both the investments and moneys forming the corpus and income of the trust estate. But two of the trustees, however, notwithstanding they are parties to the joint account, seek to avoid this responsibility to their cestuis que trust by alleging that certain moneys of both principal and income were never received by them, but solely by their cotrustee Corcoran, and misappropriated by him. However this may be, so far as respects the joint liability of the trustees, it can be of no avail. And it seems well settled by authority that the trustees, having filed a joint account and charged themselves with the whole amount of the estate as if collected and received by them, cannot thus evade liability assumed, and compel the cestuis que trust to look to one of the trustees for the amount it is alleged he misappropriated. Nor can they claim a severance in the account. They elected to treat it as a joint account, and are concluded by it. The proper course has been already pointed out, and if they did not elect to be bound by the account, in order to escape a personal liability, they should have refused to be made parties to the account filed by Corcoran alone, and proceeded to its audit and settlement and ascertained the balance due from him to the estate; then compelled him to file a further account of all moneys collected by him from the close of his account, to the date he was restrained by injunction from interfering with or

taking any part in the management of the estate. Thus the balance due by him individually of moneys his cotrustees allege were collected alone by him would be ascertained, distribution made by directing the investments forming part of the principal of the estate to be delivered to his cotrustee, if the same was not already in their possession, and the balance of income to be paid to the cestuis que trust and annuitants in accordance with the will. This is the separate distribution, contemplated by the individual accounting of executors, etc : Heyer's App. and Evangelical Asso.'s App., supra.

And no occasion would arise for either Rose Lafferty or Charles H. Lafferty to file other than a principal account if the securities, etc., were in their possession or under their control, for it is conceded and shown by the testimony, that prior to the injunction against said Corcoran, neither of them collected or received any part of the income of the estate. And any account filed by them of the income would include simply the money received since the date of the injunction. So, in like manner, by joining in the account filed by Charles H. Lafferty as a joint account, Rose E. Lafferty and P. J. Corcoran have made themselves parties to and are concluded by it, and it is now too late to escape liability by endeavoring to maintain that it should be considered first, as a separate account of P. J. Corcoran, in order to ascertain the amount due individually by him ; second, as a separate joint account of Rose E. Lafferty and Charles H. Lafferty to ascertain the amount to which they are liable ; or, third, as the separate account of Charles H. Lafferty in order to determine his individual liability. The cestuis que trust have the right to hold the three trustees to the account they elected to file or as if filed by them, and should not be compelled to follow an alleged insolvent trustee for a portion of the income or the principal he has applied to his own use. The trustees, by permitting their names to be used in its title or caption, making no objection to the account, and, when called for audit by the court, participating in its settlement and final adjudication, must be estopped thereby, and they should be held jointly and severally bound, and liable to the cestuis que trust, for the balance of both principal and income stated in the account. With this conclusion, however, the majority of the court do not concur, and, as they

are of the opinion that the form in which the account is stated
is immaterial, and its disposition by the auditing judge is
proper, the exception to his refusal to hold the trustees jointly
liable must accordingly be dismissed.

Exceptions were filed by certain of the cestuis que trust to
the allowance of commissions claimed by the accountants upon
the gain arising from the sale of investments, and by one of
the executors to the reduction by the auditing judge of the
amount of commissions claimed.  But we are not convinced
of any error in the conclusion of the auditing judge, and these
exceptions are also dismissed.  A further exception, relating
to the principal of the estate, is to the allowance of the claim
of Patrick Lafferty, one of the cestuis que trust, to recover
for services alleged to have been rendered by him in preparing
plans and specifications, and superintending the erection of
certain dwelling houses, built by the trustees.

We are not unmindful of the oftrepeated and well recog-
nized rule, that the finding of the auditing judge upon a ques-
tion of fact, like the verdict of a jury, will not be disturbed,
unless clear error or mistake of fact be shown, or that it is
clearly contrary to the evidence or weight of the evidence.
The first obstacle, however, to the allowance of this claim is a
question of law.  The claimant alleges he was employed by
two of the three trustees.  In Hill on Trustees (1857), *305,
the familiar principle is stated that trustees have all equal
power, interest and authority with respect to the trust estate,
As a general rule, therefore, they cannot act separately, but
they must all join in any sale, lease or other disposition of the
trust property, and also in a receipt for money payable to them
in respect of their office.  And in this they may differ materially
from executors, who have a joint and entire authority, and any
one of whom may effectually bind or dispose of the assets by
his own individual act.  And the principle of law, as applied
to the cases of trustees, as well as other persons holding as
joint tenants, is, that every act done by one of them for the
benefit of the whole, shall bind the others, but not those acts
which might tend to their prejudice.  And where the act is
for the benefit of the estate, the act of one will be binding on
the others.  Here, the employment of the claimant by two of
the trustees, which imposed a charge upon the trust estate

without the knowledge or concurrence of the third trustee, cannot be held to confer a benefit upon the whole number of trustees, nor in the absence of the proof of valuable and meritorious services, of benefit to the trust estate. Again, in 1 Lewin on Trusts, 374, it is stated to be a well settled principle that if there be more than one trustee all must act together. In Vandever's App., 8 W. & S. 405, it is held that in matters involving the exercise of discretion, cotrustees must join; one of them cannot bind the trust fund without the assent of the other. One of three trustees has not power to put an end to a lease of the trust property: Kingsley v. School Directors, 2 Pa. 28; Koelle v. Englert, 12 Phila. 517; De Haven v. Williams, 80 Pa. 480.

The conclusion must, therefore, be that if claimant was employed by the two trustees, as alleged by him, they exceeded their authority and could not bind the estate. For this reason alone the claim should be rejected. But, as a question of fact, two of the trustees, Rose Lafferty and Charles H. Lafferty, unequivocally deny any employment of the claimant by them, and the remaining trustee was not examined as a witness either in support of or in opposition to the claim. The only evidence approaching the dignity of proof of employment of claimant is that the trustee last referred to "presented a bill in the claimant's name to counsel for this service and said it was correct." And so remote were the alleged services of claimant from being beneficial to the estate, the evidence shows that he was a meddlesome disturber of the builder and contractors. He was not the architect, and yet, wholly unauthorized, he interfered with and assumed to change the plans of one of the contractors, to such an extent that his sister and brother, two of the trustees, peremptorily directed the contractor to proceed with the work unmindful of him; and another of the builders testified that he impeded the work by useless directions. These facts clearly disprove any employment of claimant by the trustees and far outweigh the slight attempts to substantiate his claim. It should be disallowed, and the exceptions to the award to him are sustained.

Exceptions were also filed by the receiver of the firm of P. Lafferty & Co. to recover moneys of the copartnership alleged to have been paid into the trust estate by a member of the

firm, who is also one of the trustees, but, for the reasons stated by the auditing judge, which fully sustain a disallowance of the claim the exceptions are dismissed.

We will now pass to the income account : It is shown by the testimony that the entire income was collected by P. J. Corcoran until the date of the injunction restraining him from further management or control of the estate. But the auditing judge has withheld from him all commissions or compensation, by reason of his want of good faith in the misuse of moneys of the estate, and awarded the same to Charles H. Lafferty and Rose E. Lafferty, his cotrustees. While the disallowance to said Corcoran of compensation is fully justified by the facts shown, and is not inconsistent with the rule that the orphans' court has no jurisdiction to apportion commissions among executors, etc. : Smith's Estate, 37 P. L. J. 33 ; Markle's Estate, 1 Dist. Rep. 54 ; yet it cannot be contended that the cotrustees earned and are entitled to the full rate of commissions allowed in such cases. They did not collect the income, rents and dividends, nor render the usual and necessary labor and services. They did not bestow any clerical services in the collection of the income, nor any personal attention thereto whatever. And by the conclusion reached by the court they are not personally liable for the deficit of their cotrustee. If this be the case, they should not be allowed commissions thereon. And as to the balance they should only be compensated for their responsibility, at the usual rate of two and one half per cent. But upon the income collected since the date of the injunction they should be allowed the full rate in accordance with the general rule. The exceptions are in part sustained.

By reason of other exceptions filed on behalf of the cestuis que trust, the supplemental adjudication and schedule of distribution appear to be erroneous in several respects.

1. The entire alleged deficit of one of the trustees is deducted from the corpus of the trust estate ; not merely the principal unaccounted for, but the whole amount of income alleged to be misappropriated.

2. All the expenses, counsel fees, claims of expert accountants and stenographer, for services rendered in restating the account, examination of the books of the estate, etc., and tak-

ing testimony at the hearing before the court, collateral tax and penalty, with the costs of the clerk, are deducted from the corpus of the trust estate, but, unless some reason be shown to the contrary, which does not yet appear, this is clearly inconsistent with the authorities upon the subject: Spangler's Est., 21 Pa. 335; Butterbaugh's Appeal, 98 Pa. p. 351; Mintzer's Est., 18 Phila. 97. It is furthermore evident, from the will of the testator, that the collateral inheritance tax due, as ascertained by the register, should be deducted from the income of his estate, and not from the principal, and it is by no means clear that the trustees, whose duty it was to promptly pay the tax, are not personally liable for the penalty incurred through their negligence and default. And as to the employment by the trustees of separate counsel and separate expert accountants, to examine the books and vouchers of the trustees, restate the account, etc., see Fox's Appeal, 125 Pa. 518; McDaniel's Estate, 47 Leg. Int. 534; Emlen's Estate, 8 Pa. C. C. 508.

In Patterson's Appeal, 104 Pa. 369, a trustee was personally charged with the cost of restating and correcting his account.

While recognizing the rule referred to, that the proper and necessary costs and expenses of the settlement of the account are chargeable to the income of the trust estate, yet, in view of the circumstances of this case, and the large indebtedness incurred by the trustees for professional services, expert accountants, fees, etc., it is by no means clear that, in equity, the whole amount of the claims thus made against the estate should be deducted from the income. If not, what proportion should thus be deducted, and, further, whether the circumstances and facts shown will justify an exception to the rule and warrant a contribution from the corpus of the estate; and finally, whether the trustees should not equitably be charged personally with a just and proper proportion of the indebtedness they incurred and now claim to be paid only by the trust estate? These questions do not appear to have been brought to the attention of the auditing judge, nor considered by him. In order that they may thus be carefully considered and determined, the exceptions as to these allowances are sustained, pro forma, and the adjudication recommitted for further inquiry and determination by the auditing judge.

The distribution of the balance of income gave occasion for

numerous exceptions and many hours of exhaustive argument.  Among these are those relating to the omission of the auditing judge to consider a record containing the testimony of witnesses produced and examined before an examiner appointed in a proceeding instituted by Charles H. Lafferty for the removal of his cotrustees.  The record was offered in evidence and admitted subject to the objection of counsel for Rose E. Lafferty.  An examination of the record shows it contains the testimony of witnesses, some of whom were also examined before the auditing judge, all residents of this city, still living and accessible at the time of the hearing before him.  Also, the testimony of P. J. Corcoran, who absented himself, and was not called nor examined as a witness before the auditing judge.  In view of these facts, even if counsel had not failed to deliver to the auditing judge the record admitted in evidence upon objection, it would be clear error to consider the testimony reported by the examiner.  As already stated, the witnesses were still living and within the jurisdiction, and if their testimony, and that of the trustee, was deemed material to the settlement of the account and distribution of the income, they and he should have been called to testify before the auditing judge: Chess v. Chess, 17 S. & R. 409.  Nor were the witnesses produced, and it appeared they had lost their memory through sickness or old age: Rothrock v. Gallaher, 91 Pa. 108.  The entire theory of the practice of taking the deposition of witnesses so as to enable them to be read upon the trial is that they are unable to attend personally and testify: Troubat & Haly's Practice, sec. 616; Pipher v. Lodge, 16 S. & R. 214.

We, therefore, see no error in the auditing judge in disregarding the record, and the exceptions thereto are dismissed.

The proper distribution of the balance of income in the hands of trustees is a question solely between them and the cestuis que trust.  The annuities and other payments are determined by the will.  But at present the precise balance for distribution cannot be determined, for the reason already mentioned, that the property and amount of certain allowances out of the income are yet to be ascertained.  Thus far we can consider only whether certain annuitants should be charged with payments alleged by the trustees to have been made to

them, but denied by the annuitants. The onus of proof was, therefore, upon the trustees, and, after the most careful and laborious examination of the testimony by the auditing judge, he has found, as a fact, that the sum of $7,007.81, claimed to be paid to Rose E. Lafferty by P. J. Corcoran, one of the trustees, was not paid to her, but appropriated by him to his own use or the purpose of the business of the firm of P. Lafferty & Company, of which he was a copartner. That the sum of $6,000, alleged to be paid to Patrick Lafferty by the trustee Corcoran, was never paid or advanced to him, and also that the sum of $5,592.85, alleged to be paid Charles T. Maginnis by said Corcoran, was never paid in full, but only in a part, viz: the sum of $1,500, the maximum sum admitted by the annuitant to have been paid to him.

In view of the testimony of the cestuis que trust, uncontradicted, and the explanation given by them of the transaction with the said Corcoran, whereby he sought to conceal from his cotrustees his misapplication of the money of the estate, the auditing judge is fully warranted in his conclusion that they should not be charged with the moneys alleged to have been paid to them. The exceptions to his finding are accordingly dismissed.

One of the main points of controversy before the auditing judge arose from the contention by her cotrustees, and certain of the cestui que trust, that Rose E. Lafferty, in the distribution of her share of the income, should be charged with the moneys of the estate, which it was alleged and shown that her cotrustee, P. J. Corcoran, had used for the benefit of the firm of P. Lafferty & Co. and not repaid by him or said firm, upon the ground that she was a copartner with that firm, and therefore personally liable for the amount due to the estate. It was denied by Rose E. Lafferty that she was ever a copartner with said firm. After a careful examination of the testimony, and all the facts and circumstances developed, the conclusion of the auditing judge is that she was not a member of the firm of P. Lafferty & Co. To this finding exceptions are also filed. Thus a question of fact is again presented, and, as already adverted to, the conclusion of the auditing judge should not be set aside, unless clear error be made to appear from the evidence. No articles of copartnership were produced, but it is

beyond dispute that Patrick Lafferty and P. J. Corcoran were trading together under the firm of P. Lafferty & Co. The evidence in support of the allegation that Rose E. Lafferty was also a member of the firm consists of the positive testimony of her brother, P. Lafferty, that she was a copartner with himself and Corcoran; the testimony of a well known and highly reputable member of the bar, who always "understood" he represented the firm of Patrick Lafferty & Co., and that the firm was composed of the three persons named, yet he had no personal knowledge that Rose E. Lafferty was a copartner; and although two leases were prepared by him or under his supervision wherein it is recited that she was a member of the firm, yet he did not witness the execution by her of either lease, nor was her signature by "her mark" proved by any witness whatever. The result is that neither lease was admissible in evidence as against said Rose E. Lafferty. A single admission by Rose E. Lafferty that she was a member of the firm was alleged by the expert accountant employed by one of the trustees to have been made by her to him on March 15, 1894, while he was employed in the examination of books and vouchers of the trustees and preparing their account. And finally a promissory note signed individually by P. J. Corcoran, Patrick Lafferty and Rose E. Lafferty for moneys loaned by her sister to said Corcoran for the purposes of the firm. These comprise the material facts shown by the affirmative proof. But on the other hand, repeated declarations of Patrick Lafferty that he and Corcoran composed the firm, and that no one but himself was interested in the business, were proved.

It was also proved that Corcoran admitted to the counsel for Rose E. Lafferty that he had no knowledge that she was a partner. And when urged to furnish the books of the firm for examination, he declared "that Rose has got nothing at all to do with the business; never had anything to do with it; she is not interested in it; she has no right to look at the books; I will not let them go out of my possession." And when subsequently the books were obtained by the receiver of the firm, they contained no entries showing any transactions with Rose E. Lafferty. Nor until the books were in the custody of the receiver, Corcoran surreptitiously and without the knowledge of Rose E. Lafferty or the receiver, made entries therein whereby

she is credited with moneys paid or advanced to the firm. Again it was shown by the bookkeeper that he knew no other copartner than P. Lafferty and Corcoran. That the latter directed him to have cards printed, a copy of which was produced in evidence, which displayed alone the names of P. Lafferty and P. J. Corcoran as members of the firm, and that the same card was also published as an advertisement in several papers by direction of Corcoran. And finally Rose E. Lafferty, in the most direct and unqualified language denied that she was ever a copartner with Patrick Lafferty and P. J. Corcoran. And while she knew they carried on the business of brickmaking, yet she had no interest therein. That she never authorized Corcoran to use either her moneys or moneys of the estate in said business. That she never signed either of the leases mentioned, and never had any knowledge that moneys of the estate had been used by Corcoran for his own purposes until so informed by him. That she never had the conversation with the expert accountant related by him; nor admitted to him that she was a member of the firm of Patrick Lafferty & Co. And as to the promissory note she signed, she became a party to it solely to induce them to give her sister some evidence or security for money loaned the firm. The facts thus shown, and in some instances by contradictory testimony, may be said to fairly raise a question of fact not wholly free from doubt. But the auditing judge had the witnesses before him, and was influenced in his conclusion as well by their manner as by their testimony. It was for him to decide as to the credibility of the witnesses and the weight to be given to what was said by them, and as the clear error, to justify setting aside the finding of the auditing judge, has not been made to appear, the exceptions to his conclusion must be dismissed.

Many of the remaining exceptions were dismissed, others sustained, and the adjudication recommitted to the auditing judge.

In a supplemental adjudication the auditing judge ordered and decreed, inter alia, that P. J. Corcoran pay the executors and trustees the sum of $28,750.65, $24,168.23 thereof on account of principal and $4,582.42 on account of income, and that the said claims of $4,582.42 against Corcoran should remain in accountant's hands for future accounting.

The first and second exceptions of Corcoran to this adjudication were as follows:

1. The learned court erred in not noting in his adjudication the following offers made by counsel at the audit on behalf of Patrick J. Corcoran. First, "to explain his absence at the time of the last audit; second, to show that the $6,000 was paid in fact to Patrick Lafferty by the witness, and that the money was paid to Mr. Maginnis. And further, to show that the other deficit went into the brick yard, and who composed that brick yard" (firm).

2. The learned court erred in not entering in his adjudication his ruling at the time of the audit, upon the offers as above made.

The opinion of the court, HANNA, P. J., sur exceptions to the supplemental adjudication was as follows:

The adjudication having been recommitted to the auditing judge for further hearing and correction, in accordance with the opinion of the court filed January 18, 1896, further exceptions are now taken to the amended adjudication. . . .

As to the exceptions of P. J. Corcoran, it need only be said that as to the first and second, it was wholly within the discretion of the auditing judge whether to hear the testimony of additional witnesses, or from that already in evidence, together with the record before him determine, the proportion of the costs and expenses of the investigation and settlement of the account, chargeable to principal and income. P. J. Corcoran, who was in attendance at the rehearing, was a competent witness upon the subject, if deemed necessary by the auditing judge, but he could not insist upon being heard. It was therefore not error to decline to admit him to be examined, nor omit to state in the readjudication he had been offered as a witness and his examination was deemed unnecessary.

The remaining exceptions to the awards to Charles T. Maginnis and Patrick Lafferty allowed by the original adjudication, and to the separate charge against said P. J. Corcoran of his alleged deficit in both the principal and income of the estate, all refer to matters disposed of by the original adjudication and now form merely part of the schedule of distribution. As these were not the subject of the rehearing it was irregular

to again file exceptions thereto. The proper remedy is by appeal upon the final confirmation of the adjudication.

The exceptions filed by P. J. Corcoran are therefore dismissed.

*Error assigned* was the decree of the court.

*F. A. Hartranft* and *James M. Beck*, with them *W. F. Harrity*, for appellant, Patrick J. Corcoran.—An executor who permits his coexecutor to act as receiver, without proper supervision, is liable for the administration of the latter: Cressman's Est., 2 Phila. 76 ; Hess's Est., 2 Phila. 243.

By the settlement of a joint administration account, executors render themselves prima facie jointly liable for the acknowledged balance: Hengst's App., 24 Pa. 413 ; Doeblet v. Snavely, 5 Watts, 228 ; Ducommun's App., 17 Pa. 270 ; Irwin's App., 35 Pa. 294 ; Robinson's Est., 7 Phila. 61 ; Fesmire's Est., 134 Pa. 67 ; Wilson's App., 115 Pa. 95.

If money be paid to one trustee by act, direction or agreement of the other, where he had it in his power to control or secure it, he is responsible: Monell v. Monell, 5 Johns. Chan. 286 ; Pim. v. Stalker's Exrs., 11 S. & R. 66.

*Samuel Gustine Thompson*, with him *George L. Crawford*, for appellee, Charles H. Lafferty, cited Fesmire's Est., 134 Pa. 85 ; Jones's App., 8 W. & S. 143 ; Wilson's App., 115 Pa. 95 ; Hall v. Boyd, 6 Pa. 270 ; Lightcap's App., 28 Pitts. L. J. 162.

*J. Willis Martin*, with him *Eli Kirk Price* for appellee, Rose E. Lafferty.

*Henry Budd*, with him *George Peirce*, for appellees, Patrick Lafferty and Francis P. Lafferty.

*E. Spencer Miller*, for appellee, Charles T. Maginnis.

PER CURIAM, January 17, 1898:

A careful consideration of this record with special reference to the several questions involved has failed to convince us

that there is any substantial error either in the findings of fact, or in the conclusions drawn therefrom by the learned court below. As to some of the former—especially the question, whether Rose E. Lafferty was a member of the firm of P. Lafferty & Co.—the testimony was conflicting and contradictory, but we cannot say that the finding, as to either, was not in accordance with the weight of the evidence as it correctly appeared to the learned judge who had the witnesses before him, and thus possessed opportunities of forming a correct judgment that an appellate court cannot have. All the findings of fact, respectively, rest on sufficient evidence, and we must assume that they are severally correct until the contrary clearly appears.

It is unnecessary to notice the specifications of error in detail. It would consume much time to no useful purpose. They are all overruled.

Decree affirmed and appeals dismissed at appellant's costs.